Anthony T. LEE et al., Plaintiffs,

United States of America,
Plaintiff-Intervenor,

National Education Association, Plaintiff-
Intervenor, Appellant,

v.

WASHINGTON COUNTY BOARD OF
EDUCATION et al.,
Defendants-Appellees.

No. 78–3338.

United States Court of Appeals,
Fifth Circuit.

Sept. 18, 1980.

Solomon S. Seay, Jr., Montgomery, Ala., for plaintiff-intervenor, appellant.

Edward P. Turner, Jr., Chatom, Ala., for defendants-appellees.

Before MORGAN, CHARLES CLARK and TATE, Circuit Judges.

CHARLES CLARK, Circuit Judge:

In this appeal from an interim order in an ongoing school desegregation controversy, we review a judgment of the district court that denied in part the plaintiff-interve-nor's motion and amended motion for further relief from the school system's employment practices and several of its individual employment decisions. We affirm in part and, in part, vacate and remand.

On January 22, 1970, a three-judge district court entered an order requiring the desegregation of the Washington County, Alabama, public school system. This order provided, in relevant part, that "[s]taff members who work directly with school children and professional staff who work on the administrative level will be hired, assigned, promoted, paid, demoted and dismissed without regard to race or color."

In September 1976 and November 1977, the plaintiff-intervenor, National Education Association, Inc. [NEA], filed a motion and an amended motion for further relief, contending that the policies and practices of the Washington County Board of Education [Board] with respect to the appointment of principals, the hiring and assignment of teachers and teachers' aides, the appointment and assignment of athletic coaches and the selection of the Board's central office staff violated the fourteenth amendment and failed to comply with the terminal order of desegregation. Additionally, the NEA advanced individual claims of employment discrimination on behalf of six blacks who either were terminated from or not appointed to various positions in the Washington County public school system. After a two-day hearing at which the parties presented both oral testimony and documentary evidence, the district court, on August 6, 1978, issued an opinion and entered a judgment that granted in part and denied in part the NEA's motions for further relief.[1] *See Lee v. Washington County*

---

1. On February 10, 1977, the district court entered an order that, among other things, found the Washington County public school system "has achieved a unitary status and is desegregated in nature." The United States Department of Justice on March 16, 1977, objected to the order, expressly noting that the pending motion for further relief filed by the NEA "raised some question as to whether the school district has ever operated in compliance with the [January 22, 1970] Court Order." The dis-

trict court denied the objection without opinion on October 13, 1977. On July 31, 1978, the Department of Justice reasserted its objection to the district court's February 10, 1977, order by filing a post-trial brief in the present motion proceeding, requesting that the district court reconsider its prior order. The district court declined reconsideration. *See Lee v. Washington County Bd. of Educ.*, 456 F.Supp. 1175, 1187 (S.D.Ala.1978). The Department of Justice did not appeal.

*Board of Education*, 456 F.Supp. 1175 (S.D. Ala.1978).

On appeal, the NEA argues that the district court erred by failing to require the Board to affirmatively recruit and employ qualified blacks for the athletic coaching and central office staffs. It also contends the district court erred by failing to grant relief on the individual claims of employment discrimination brought on behalf of Warren Roberts, Cleophus Stephens, and Vera Breech.[2] We affirm the judgment of the district court insofar as it refused to currently require an affirmative effort on the part of the Board to recruit and employ qualified blacks for the athletic coaching and central office staffs. We also affirm the portion of the judgment that denied the individual claim of employment discrimination brought on behalf of Breech. However, with respect to the individual claims of employment discrimination brought on behalf of Roberts and Stephens, we vacate the judgment and remand the action to the district court.

### I. Coaching and Central Office Staffs

The plaintiff-intervenor introduced evidence demonstrating that all fourteen of the head athletic coaches and sixteen of the eighteen assistant athletic coaches hired by the Board between the school years 1970–71 and 1976–77 were white. It also introduced evidence showing that in 1970 whites held all four positions on the Board's central office staff and that the Board filled each vacancy occurring since 1970 with a white applicant. The NEA argues that, based on this statistical proof, the district court should have entered an order requiring the Board to affirmatively recruit and employ qualified black applicants for the athletic coaching and central office staffs until the racial composition of these staffs approximates that of the student population in the public school system.

■ The internal affairs of a local school system should be administered by its elected or appointed authorities, not by federal courts. *See Megill v. Board of Regents*, 541 F.2d 1073, 1077 (5th Cir. 1976); *Blunt v. Marion County School Board*, 515 F.2d 951, 956 (5th Cir. 1975). *See generally Callahan v. Price*, 505 F.2d 83, 88 (5th Cir. 1974), *cert. denied*, 423 U.S. 927, 96 S.Ct. 273, 46 L.Ed.2d 254 (1975); *Lee v. Macon County Board of Education*, 490 F.2d 458, 460 (5th Cir. 1974); *Ferguson v. Thomas*, 430 F.2d 852, 858 (5th Cir. 1970). However, where a local school authority discriminates unconstitutionally against an individual or a class of individuals, it becomes the court's duty to fashion appropriate relief.

■ Proof of an immediate past history of racial discrimination alone can be sufficient to shift to the local board of education the burden of justifying its employment decisions by clear and convincing evidence. *See Davis v. Board of School Commissioners*, 600 F.2d 470, 473 (5th Cir. 1979); *Hereford v. Huntsville Board of Education*, 574 F.2d 268, 270 (5th Cir. 1978); *Barnes v. Jones County School District*, 544 F.2d 804, 807 (5th Cir. 1977); *Roper v. Effingham County Board of Education*, 528 F.2d 1024, 1025 (5th Cir. 1976). Even where, as here, the system has been found now to be desegregated and unified, see note 1, *supra*, such history remains relevant evidence. A showing of discriminatory purpose is required to prove a prima facie case of discrimination under 42 U.S.C. §§ 1981 and 1983. *See Village of Arlington Heights v. Metropoli-*

---

**2.** The NEA presented six individual claims of employment discrimination to the district court. The court held that the Board discriminated against Rubye Nelson on the basis of race by failing to hire her as a summer school English teacher in 1977. It also held that the Board discriminated against Brenda Fancher on the basis of race by failing to renew her contract as a special education teacher for the 1977–78 school year. The district court granted relief to both Nelson and Fancher and the Board did not appeal.

In addition to rejecting the individual claims of employment discrimination brought on behalf of Roberts, Stephens, and Breech, the district court denied relief to George Holcombe, an applicant for the position of high school principal for the 1976–77 school year. Prior to the hearing before the district court in this action, George Holcombe was appointed to and accepted a position as middle school principal in the Washington County public school system. The NEA does not assert his claim of employment discrimination on appeal.

*tan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Williams v. Dekalb County*, 582 F.2d 2 (5th Cir. 1978). *See generally Ramirez v. Sloss*, 615 F.2d 163, 168 n.8 (5th Cir. 1980).

■ The statistical evidence presented by the NEA, when considered in light of the historical background of this litigation, proved a prima facie case of purposeful discrimination on the basis of race that, if unrebutted, would have supported a district court's grant of the requested relief. However, additional evidence presented at the district court hearing rebutted the prima facie case of employment discrimination and demonstrated conclusively that the lack of blacks hired since 1970 for positions on both the athletic coaching and the central office staffs resulted not from purposeful discrimination but solely from a lack of black applicants.

John S. Wood, the Superintendent of Education for Washington County, Alabama, testified that the Board in 1978 received the first application from a black for a head coaching position since 1970. The Board appointed the applicant, David Davis, to be head coach at McIntosh High School for the 1978–79 school year. Wood's testimony additionally disclosed the misleading nature of the statistical evidence presented by the NEA with respect to the athletic coaching staff. By focusing solely on those individuals hired since 1970 specifically as head or assistant athletic coaches, the statistical proof failed to reflect the true racial composition of the coaching staff. The evidence presented to the district court showed that in 1978 the staff contained a significant number of blacks who either were hired prior to 1970 or who, although hired for specific positions other than head or assistant coach, served as and received supplemental remuneration reserved for athletic coaches. Superintendent Wood testified that it was not until May 1978 when the Board received the first application from a black for a position on the central office staff. In the instant case, the district court properly declined to order the affirmative relief requested by the NEA because the plaintiff-intervenor failed to carry its burden of proving the requisite unconstitutional discrimination.

The district court correctly observed that the evidence fails to disclose "whether the lack of black applications resulted from a lack of qualified blacks in the area, or from a policy or practice on the Board's part in not advertising its openings to the general public." 456 F.Supp. at 1187. Concerned by the lack of black applicants for positions on these staffs, the district court noted that it would "insist that the Board adopt an appropriate advertisement policy to ensure that the most qualified candidates will apply" for positions in the Washington County public school system. The district court's opinion, however, stopped short of expressly requiring the Board to implement a policy of advertising employment opportunities to the general public.[3] The district court found and our review confirms that the record fails to indicate that the lack of advertising actually discriminated against blacks.[4] We cannot say that, based on the record before it, the district court erred by failing to order the additional affirmative relief requested by the NEA.

## II. Individual Claims

The NEA advanced individual claims of employment discrimination on behalf of

---

3. Rather, the court expressed its concern "that mere word of mouth notification is not in keeping with the sound administrative procedures that the Board is bound by law to follow." 456 F.Supp. at 1181 n.9. It further announced its conviction "that the notice policy previously employed by the Board (or lack thereof) ought to be reconsidered," *id.* at 1182 n.9, and indicated its intention "to insist that the Board adopt an appropriate advertisement policy." *Id.* at 1191. Counsel for the Board at oral argument advised this Court that, in compli-

ance with the district court's admonitions, the Board now has developed and fully implemented a policy of advertising to the general public the employment opportunities that arise within the school system.

4. *See id.* at 1191 n.31. *But see generally Long v. Sapp*, 502 F.2d 34, 41 (5th Cir. 1974); *Franks v. Bowman Transp. Co.*, 495 F.2d 398, 419 (5th Cir.), *cert. denied*, 419 U.S. 1050, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974); *United States v. Georgia Power Co.*, 474 F.2d 906, 925 (5th Cir. 1973).

Warren Roberts, Cleophus Stephens, and Vera Breech, claiming (1) that the Board failed to appoint Roberts and Stephens as high school principals and failed to hire Breech as special education coordinator, (2) that the Board's actions resulted from a purposeful discrimination against blacks, and (3) that the Board's actions violated the individuals' rights secured by the fourteenth amendment to the United States Constitution and contravened the January 22, 1970, terminal order of desegregation. As such, the plaintiff-intervenor raised individual claims of employment discrimination cognizable under 42 U.S.C. §§ 1981 and 1983.

## A. Roberts and Stephens

The district court rejected the individual claims of employment discrimination brought on behalf of Roberts and Stephens because the NEA failed to prove that, based on objective standards, they were the most qualified applicants for the position.[5] The district court erred by imposing this burden on the plaintiff-intervenor.[6] We therefore vacate this portion of the district court's judgment and remand the action to the district court.

■ In this circuit, the principles governing an individual's right to back pay and injunctive relief in cases of class-based employment discrimination brought under 42 U.S.C. §§ 1981 and 1983 are clear. Once purposeful discrimination against a class is proved, a presumption of an entitlement to back pay and individual injunctive relief arises with respect to the members of that class. The burden of proof then shifts to the employer to show by clear and convincing evidence that the individual member of

the class seeking relief would not have been hired absent the discrimination. See Davis v. Board of School Commissioners, 600 F.2d at 474; McCormick v. Attala County Board of Education, 541 F.2d 1094, 1095 (5th Cir. 1976); Mims v. Wilson, 514 F.2d 106, 110 (5th Cir. 1975); Cooper v. Allen, 467 F.2d 836, 840 (5th Cir. 1972).

■ The NEA showed that, between the school years 1970–71 and 1977–78, six vacancies occurred for the position of high school principal and that, despite the existence of qualified black applicants, the Board appointed a white applicant to fill each of the six vacancies. Prior to the January 22, 1970, terminal order of desegregation, the Board operated a dual public school system consisting of thirteen schools. Eight of these schools were white and had white principals. The remaining five schools were black and had black principals. Since the order of desegregation, the Board has operated ten schools, five of which are designated as high schools. Four of these high schools, Millry, Fruitdale, Leroy, and Washington County, were white schools in the dual system. No black ever has served as principal at any of these schools. The remaining high school, McIntosh, formerly was a black school in the dual system. McIntosh operated with a black principal through the 1973–74 school year, at which time a white was appointed to that position. Since that appointment, all high school principalships in the Washington County public school system have been held by whites. This evidence, considered in light of the historical background of this litigation, proved that the Board purposefully discriminated against blacks in the appointment of high school principals.

---

**5.** Roberts applied for the position of principal at McIntosh High School for the 1976–77 school year. Stephens applied for the position of principal at Leroy High School for the 1976–77 school year. Superintendent Wood testified that, in his opinion, both Roberts and Stephens were qualified in 1976 to serve as principals of these schools.

**6.** The district court cited and the Board on appeal relies upon Lee v. Chambers County Bd. of Educ., 533 F.2d 132 (5th Cir. 1976), for the proposition that an individual asserting a claim of employment discrimination must prove that

he was the most qualified applicant for the position. This misapprehends the holding in Chambers County. As evidenced by our subsequent decision in Davis v. Board of School Comm'rs, Chambers County can only support the proposition that "[w]here the defendant offers sufficient proof that white recipients of promotions are better qualified than the black individual who alleges discrimination, then the district court's denial of injunctive relief and damages to that plaintiff is proper." 600 F.2d at 474.

Having demonstrated the purposeful discrimination against blacks in the appointment of high school principals, a presumption of back pay and individual injunctive relief arose with respect to Roberts and Stephens. The burden was then on the Board to show by clear and convincing evidence that Roberts and Stephens would not have been appointed to the positions absent the discrimination. The district court's failure to apply the correct legal standard to these individual claims coupled with the confusing nature of the record presented to us on appeal prevent us from determining whether the Board met their burden. We therefore remand this action to the district court for further proceedings.[7] On remand, the district court must award back pay and individual injunctive relief to Roberts and Stephens unless the Board proves by clear and convincing evidence that these individuals would not have been appointed to the positions absent the discrimination proved.

### B.  Breech

■ The district court rejected the individual claim of employment discrimination advanced on behalf of Vera Breech. We affirm.

Vera Breech was not appointed to the position of special education coordinator when that position was created in 1975. The NEA, in presenting to the district court the individual claims of employment discrimination brought on behalf of Breech, Rubye Nelson, and Brenda Fancher, attempted to raise a presumption of individual relief based upon proof of purposeful class-based discrimination against blacks in the hiring of instructional personnel. The evidence presented to the district court, even when considered in light of the historical background of this litigation, failed to prove such discrimination.

The NEA presented evidence showing that the racial composition of the student population was approximately 62 percent white and 38 percent black throughout the eight-year period from the entry of the terminal order of desegregation to the trial of this action.[8] The evidence further

---

**7.** The NEA also attempted to show that (1) Roberts and Stephens belong to a racial minority, (2) they applied and were qualified for positions for which the Board was seeking applicants, (3) the Board rejected them despite their qualifications, and (4) the Board appointed nonminorities to the positions. It thus attempted to raise an inference of purposeful discrimination through proof of the four-prong test established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973). A party may utilize proof of the *McDonnell Douglas* factors to raise an inference of purposeful employment discrimination in a case brought under 42 U.S.C. § 1981. *See Crawford v. Western Elec. Co.*, 614 F.2d 1300, 1315 (5th Cir. 1980). We need not decide whether the evidence presented by the NEA was sufficient to raise an inference of purposeful discrimination because, in the context of this case, any showing by clear and convincing

proof that Roberts and Stephens would not have been employed absent the class-based discrimination clearly would suffice to rebut the inference of purposeful discrimination raised by proof of the *McDonnell Douglas* factors. *See generally id.* at 1320–21.

It is appropriate to note one other matter. If an employer is unable to prove by clear and convincing evidence that the individual member of the class seeking relief would not have been hired absent the discrimination, individual relief must be awarded unless special circumstances are present. *See McCormick v. Attala County Bd. of Educ.*, 541 F.2d 1094, 1095 (5th Cir. 1976); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 253 (5th Cir. 1974). The record is devoid of evidence of special circumstances that would prevent relief in this action.

**8.** The evidence presented to the district court discloses the following statistical information:

Racial Composition of Student Population

| SCHOOL YEAR | WHITE NUMBER | WHITE PERCENTAGE | BLACK NUMBER | BLACK PERCENTAGE |
|---|---|---|---|---|
| 1970–71 | 2808 | 61.8 | 1735 | 38.2 |
| 1971–72 | 2722 | 61.1 | 1733 | 38.9 |
| 1972–73 | 2694 | 61.4 | 1693 | 38.6 |
| 1973–74 | 2711 | 62.1 | 1652 | 37.9 |
| 1974–75 | 2616 | 61.6 | 1629 | 38.4 |

Footnote 8 continued on next page

showed that during this same period, the racial composition of teachers newly hired, although fluctuating annually, averaged 72 percent white and 28 percent black.[9] The evidence also showed that, as the result of such hiring, the Board successfully maintained a teaching force with a racial composition that averaged 65 percent white and 35 percent black and approximated the racial composition of the student population within the system.[10] The evidence with respect to the employment of teachers' aides similarly approximates the racial composition of the student population.[11] Be-

Footnote 8—Continued

| SCHOOL | WHITE | | BLACK | |
|---|---|---|---|---|
| YEAR | NUMBER | PERCENTAGE | NUMBER | PERCENTAGE |
| 1975–76 | 2584 | 62.4 | 1554 | 37.6 |
| August 1977 | 2532 | 62.2 | 1541 | 37.8 |
| September 1978 | 2636 | 62.8 | 1563 | 37.2 |
| Average | 2662.9 | 61.9 | 1637.5 | 38.1 |

9. The evidence presented to the district court discloses the following statistical information:

Hiring of Teachers*

| SCHOOL | WHITE | | BLACK | |
|---|---|---|---|---|
| YEAR | NUMBER | PERCENTAGE | NUMBER | PERCENTAGE |
| 1970–71 | 29 | 78.4 | 8 | 21.6 |
| 1971–72 | 25 | 61.0 | 16 | 39.0 |
| 1972–73 | 24 | 64.9 | 13 | 35.1 |
| 1973–74 | 23 | 59.0 | 16 | 41.0 |
| 1974–75 | 19 | 86.4 | 3 | 13.6 |
| 1975–76 | 26 | 83.9 | 5 | 16.1 |
| 1976–77 | 28 | 68.3 | 13 | 31.7 |
| 1977–78 | 19 | 86.4 | 3 | 13.6 |
| Average | 23.9 | 71.5 | 9.6 | 28.5 |

* Includes teachers employed under Title I of the Elementary and Secondary Education Act of 1965.

10. The evidence presented to the district court discloses the following statistical information:

Racial Composition of Teaching Staff*

| SCHOOL | WHITE | | BLACK | |
|---|---|---|---|---|
| YEAR | NUMBER | PERCENTAGE | NUMBER | PERCENTAGE |
| 1970–71 | 132 | 68.0 | 62 | 32.0 |
| 1971–72 | 139 | 65.3 | 74 | 34.7 |
| 1972–73 | 133 | 61.6 | 83 | 38.4 |
| 1973–74 | 127 | 60.5 | 83 | 39.5 |
| 1974–75 | 131 | 63.0 | 77 | 37.0 |
| 1975–76 | 143 | 64.7 | 78 | 35.3 |
| August 1977 | 155 | 66.5 | 78 | 33.5 |
| September 1978 | 159 | 67.7 | 76 | 32.3 |
| Average | 139.9 | 64.7 | 76.4 | 35.3 |

* Includes teachers employed under Title I of the Elementary and Secondary Education Act of 1965.

11. The evidence presented to the district court discloses the following statistical information:

Hiring of Title I Teachers' Aides

| SCHOOL | WHITE | | BLACK | | AMERICAN INDIAN | |
|---|---|---|---|---|---|---|
| YEAR | NUMBER | PERCENTAGE | NUMBER | PERCENTAGE | NUMBER | PERCENTAGE |
| 1970–71 | 6 | 60.0 | 3 | 30.0 | 1 | 10.0 |
| 1971–72 | 2 | 50.0 | 2 | 50.0 | 0 | 0.0 |

Footnote 11 continued on next page

cause the NEA failed to show the Board purposefully discriminated against blacks in the hiring of instructional personnel, the district court properly rejected the individual claim of employment discrimination brought on behalf of Vera Breech.[12]

The judgment appealed from is affirmed in part and vacated in part and the action is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED in part, VACATED in part, and REMANDED.

Footnote 11—Continued

Racial Composition of Title I Teachers' Aides

12. The NEA also introduced evidence showing that (1) Breech belongs to a racial minority, (2) she expressed an interest in and was qualified for a position for which the Board was seeking applicants, (3) the Board rejected her despite her qualifications, and (4) the Board appointed a nonminority to the position. As in the case of Roberts and Stephens, the NEA thus attempted to raise an inference of purposeful. discrimination through proof of the four-prong test established in *McDonnell Douglas*. *See* note 7, *supra*. The district court placed no weight on Breech's failure to apply for the specific position of special education coordinator and assumed that the NEA proved a prima facie case of discrimination. *See* 456 F.Supp. at 1189. However, the district court rejected Breech's individual claim for relief, holding that, by showing that the successful applicant for the position of special education coordinator had more experience than Breech in the area of special education, the Board articulated a legitimate, nondiscriminatory reason for its hiring decision. *See id.* On the facts of this case, we agree with the district court's denial of individual relief to Breech.