634 F.2d 959
 26 Fair Empl.Prac.Cas. 1251,
25 Empl. Prac. Dec. P 31,520
Anthony T. LEE et al., Plaintiffs,
United States of America, Plaintiff-Intervenor,
v.
CONECUH COUNTY BOARD OF EDUCATION et al., Defendants-Appellees,
Samuel T. Gantt, Plaintiff-Intervenor-Appellant.
 No. 79-1442.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 22, 1981.
 
 Solomon S. Seay, Jr., Montgomery, Ala., for plaintiff-intervenor-appellant.
 Robert G. Kendall, Mobile, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Alabama.
 Before VANCE and GARZA, Circuit Judges, and ALLGOOD*, District Judge.
 VANCE, Circuit Judge:
 
 
 1
 Plaintiff Samuel T. Gantt brought this 42 U.S.C. § 1983 action as an intervenor in the school desegregation litigation in Conecuh County, Alabama. He alleges that defendants Conecuh County Board of Education, its members, and the Superintendent of Schools violated his constitutional rights by repeatedly failing to promote him to a principalship because of his race. The trial court found that defendants successfully rebutted the prima facie case of intentional racial discrimination established by Gantt. Because we find that its holding is clearly erroneous, we reverse.
 
 
 2
 Gantt is a black male who is currently employed by the Conecuh County school system as a teacher. He holds a master's degree in administration and has a Rank I certificate in administration and supervision from the Alabama Department of Education qualifying him to serve as an elementary, junior high, or senior high school principal. He continues to take upper level administration courses. Gantt served as a principal in various schools in the Conecuh County system from 1946 to 1965. At that time he left to serve as a principal in the Escambia County school system. In 1967 Gantt returned to the Conecuh County system as a classroom teacher and has remained in that position. He testified that his return was motivated in part by a promise from the superintendent at that time that he would be offered an administrative position.
 
 
 3
 No such position was ever offered, although Gantt requested formally in 1971, 1972 and 1975 that he be considered for a principalship. Sixteen principalship vacancies have occurred in the Conecuh County system since 1967, several of them since the time of Gantt's first letter in 1971. Gantt argues that in at least three of these cases he possessed qualifications objectively superior to those of the white person chosen for the job. In 1971-72 and 1973-74 principalships at Lyeffion High School were filled by whites holding only a Rank II certificate, qualifying them as teachers but not as principals. In 1977-78, after the complaint in this case was filed, a white was named to take over the principalship responsibilities of the Repton High School although he lacked a Rank I certificate at that time and in addition did not possess the "minimum of five years' experience as a principal" that was part of the published job requirements.[1]
 
 
 4
 Using the standard developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) for Title VII disparate treatment cases, the trial court found that the plaintiff had the burden of establishing by a preponderance of the evidence that he was a member of a racial minority, that he applied for and was qualified for appointment to a principal's position, that he was rejected despite his qualifications, and that following his rejection the board continued to consider applicants from persons similarly qualified and the position remained open. The court found that Gantt established each of these factors. Additionally, the court decided that statistical evidence offered by Gantt also contributed to a showing of racially discriminatory animus on the part of the school board. The court noted that there had been a 70% reduction in the number of black principals since the disestablishment of the county's dual school system while the number of white principals had stayed constant. It also found that traditionally white schools have continued to have white principals and that the board has failed to adopt objective nonracial criteria to guide its selections of principals. Other evidence established that of the 16 principalship vacancies that had occurred since Gantt's return to the system, only 3 had been filled by blacks.
 
 
 5
 In concluding that the defendants had denied Gantt promotion for nonracial reasons the district court observed that the Repton High School principalship had first been offered to a black who turned it down. It noted that a school supervisor had turned in a number of negative evaluations of Gantt's teaching beginning in December, 1974. The court also considered the school superintendent's stated reservations about Gantt.[2]
 
 
 6
 We note at the outset that the trial court correctly ruled that this case does not arise under Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1970), since Gantt's demotion from principal to classroom teacher did not result from the integration of Conecuh's dual school system. For Gantt to prevail, therefore, it is necessary to find that but for the defendants' racially motivated discrimination, Gantt would have been offered a principalship.
 
 
 7
 The trial court analyzed this case under the assumption that the elements of a prima facie case of racial discrimination in employment under section 1983 are the same as those set forth for Title VII disparate treatment cases in McDonnell Douglas Corp. v. Green.[3] This circuit has never explicitly decided whether the elements of a prima facie case of racial discrimination are the same under both statutes. We have observed, however, that "the McDonnell Douglas prima facie formula presents a logical and appealing application in ... 1983 cases," Ramirez v. Sloss, 615 F.2d 163, 168-69 (5th Cir. 1980) and have held that when section 1983 is used as a parallel remedy with Title VII in a racial discrimination suit the elements of a cause of action are the same under both statutes, Whiting v. Jackson State University, 616 F.2d 116, 121 (5th Cir. 1980). Logic dictates that the McDonnell Douglas factors may be used to establish a prima facie case in cases of racially motivated employment discrimination brought under section 1983 whether or not Title VII is used as a parallel remedy. Section 1983 actions challenging racial discrimination under the equal protection clause and Title VII disparate treatment cases both require a showing of discriminatory motive, and the nature of a prima facie showing is the same in either case:
 
 
 8
 A McDonnell Douglas prima facie showing is not the equivalent of a factual finding of discrimination .... Rather, it is simply proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations.
 
 
 9
 Furnco Construction Corp. v. Waters, 438 U.S. 567, 579-80, 98 S.Ct. 2943, 2951, 57 L.Ed. 957 (1978).
 
 
 10
 In International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Supreme Court noted that in disparate treatment cases, "Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. See, e. g., Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265-266 (97 S.Ct. 555, 563-564, 50 L.Ed.2d 450)." 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15. As the third circuit observed in Scott v. University of Delaware, 601 F.2d 76, 80-81 (3d Cir.), cert. denied, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979) the Court's reference in Teamsters to Arlington Heights, which addressed proof of discriminatory intent in cases brought under the Constitution, indicates the similarity of the motive requirement in disparate treatment cases and section 1983 suits. See also Williams v. Anderson, 562 F.2d 1081, 1087-88 n. 8 (8th Cir. 1977) (discussing the relation of section 1983 and Title VII suggested by Teamsters and taking special note of the Court's citation to Arlington Heights).
 
 
 11
 The McDonnell Douglas formulation does not provide the only means by which a plaintiff may establish a prima facie case in employment discrimination cases. See Teamsters, 431 U.S. at 358, 97 S.Ct. at 1866; McCorstin v. United States Steel Corp., 621 F.2d 749, 753 (5th Cir. 1980); Ramirez v. Sloss, 615 F.2d at 168. Nor will the McDonnell Douglas factors be applicable in all section 1983 suits. The presumptions concerning racial discrimination underlying the McDonnell Douglas test may not be relevant when other constitutional violations are involved. For example, when employment discrimination in violation of first amendment rights has been charged, this court has employed a somewhat different standard. See Tanner v. McCall, 625 F.2d 1183, 1192-93 (5th Cir. 1980). In section 1983 suits alleging racially motivated employment discrimination, however, the factors set forth in McDonnell Douglas represent one means by which a plaintiff may establish a prima facie case. See Huntley v. Community School Board of Brooklyn, 543 F.2d 979, 983 n. 6 (2d Cir. 1976), cert. denied, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977) (noting in the context of an equal protection claim that "(a)lthough McDonnell dealt with questions of the order and nature of proof in actions under Title VII ... by analogy the principles there enunciated are applicable here.").[4]
 
 
 12
 Once the plaintiff has established a prima facie case, the employer may rebut it by articulating some legitimate, nondiscriminatory reason for his actions. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. In this circuit we have held that the employer bears the burden of proving the legitimate, nondiscriminatory reasons for his actions by a preponderance of the evidence in both Title VII actions, see Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1255 (5th Cir. 1977) and section 1983 suits, see Ramirez v. Sloss, 615 F.2d at 169. As part of his burden, "the defendant must also prove that those hired or promoted were better qualified than the plaintiff." Falcon v. General Telephone Co. of the Southwest, 626 F.2d 369, 378 (5th Cir. 1980) (citing East v. Romine, Inc., 518 F.2d 332 (5th Cir. 1975)). In light of Conecuh's recent conversion from a dual school system, however, the trial court correctly found that in this case the burden was upon defendants to prove nondiscriminatory reasons by clear and convincing evidence. At the time that Gantt filed this suit, Conecuh County was operating under a federal injunction ending a regime of de jure segregation. "Proof of an immediate past history of racial discrimination alone can be sufficient to shift to the local board of education the burden of justifying its employment decisions by clear and convincing evidence. (citations omitted)" Lee v. Washington County Board of Education, 625 F.2d 1235, 1237 (5th Cir. 1980). Accord, Hardy v. Porter, 613 F.2d 112, 113 (5th Cir. 1980).
 
 
 13
 The defendants' ability to prove legitimate reasons for their decision not to promote Gantt was undermined by their failure to adopt written, objective nonracial criteria for selecting principals. The trial court stated that it was unable to conclude whether Gantt was better qualified than white candidates selected for principalships "for the Board has not adopted any such non-racial objective criteria and, until this is done, the Court will never be in a position to adequately consider the propriety of any principal selection made by the Board." The defendants' contention that they acted for legitimate reasons could therefore not rest on the assertion that any of the applicants chosen were more qualified than Gantt and it was impossible for them to carry the burden of proving that "those hired or promoted were better qualified than the plaintiff." Falcon v. General Telephone Company of the Southwest, 626 F.2d at 378. In each of the three principal selections of which Gantt complains, the only objective evidence available indicates that he was clearly superior to the candidate chosen. In each case Gantt possessed certification as a principal while the candidate chosen did not.
 
 
 14
 Despite the objective evidence of Gantt's superior qualifications, defendants contend that they refused to promote him because they considered him unfit for a principalship. Aside from inconclusive and largely irrelevant testimony concerning Gantt's personal finances and a rumor of a single incident involving delayed payment of a school milk bill, defendants base their argument on subjective evaluations of Gantt's teaching ability, relying principally on the evaluations of a single supervisor.[5] "Establishing qualifications is an employer's prerogative, ... but an employer may not utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when its promotion process, for example, is challenged as discriminatory." Crawford v. Western Electric Co., 614 F.2d 1300, 1315 (5th Cir. 1980) (citing Rowe v. General Motors Corp., 457 F.2d 348, 358 (5th Cir. 1972)). See also Johnson v. Uncle Ben's, Inc., 628 F.2d 419, 426 (5th Cir. 1980); Parson v. Kaiser Aluminum & Chemical Corp., 575 F.2d 1374, 1384 (5th Cir. 1978), cert. denied, 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); Jenkins v. Caddo-Bossier Association for Retarded Children, 570 F.2d 1227, 1229 (5th Cir. 1978). It is difficult to conclude that the testimony offered rebutted Gantt's evidence of objective qualifications in a clear and convincing manner and it does not address at all the comparative qualifications of the applicants chosen.
 
 
 15
 The trial court's ruling was influenced in great part by the fact that the Repton principalship had been offered at one point to another black applicant. While such evidence is relevant, it is not determinative in this case. In the first place, it is relevant only to the Repton principalship selection. Second, the fact that defendants offered the principalship to a black after this litigation was underway does not itself establish a lack of discriminatory intent. If the defendants fail to demonstrate a legitimate reason for hiring a white for the principalship, they have failed to rebut the plaintiff's prima facie case.
 
 
 16
 Even if the defendants' allegations concerning Gantt's unfitness were thought to rebut his prima facie case, however, plaintiffs still had the opportunity to demonstrate that the defendants' reasons were pretextual. McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. at 1825. In addition to evidence of his superior qualifications, Gantt introduced statistical evidence of the failure to hire blacks for principalships since the conversion of Conecuh County from a dual system. In the face of proof that the number of black principals in the system has declined by 70% while the number of white principals has remained the same, and that blacks have been appointed to only 19% of the principalship vacancies, the defendants' subjective assertions concerning Gantt's administrative ability must be considered pretextual.[6]
 
 
 17
 In reviewing the record before us in light of the applicable law, we conclude that the district court's finding that Gantt was not appointed to each of the three principalships discussed above for nonracial reasons is clearly erroneous. Accordingly, Gantt is entitled to be instated as a principal and to back pay based on the differential between his salary as a teacher and the salary he would have received as a principal. We reverse the district court's contrary judgment and remand for further proceedings consistent with this holding.
 
 
 18
 REVERSED and REMANDED.
 
 
 
 *
 District Judge of the Northern District of Alabama, sitting by designation
 
 
 [1]
 The white appointee at Repton, David Johnson, has been given the titles of acting principal and assistant principal. However, the school system certified him to the Alabama State Department of Education as the principal of Repton, and he now performs the duties and receives the salary of a principal. The finding of the lower court that the position at Repton High remains open is clearly erroneous. For the purposes of Gantt's discrimination claim, the Repton position was filled as of the date of Johnson's appointment
 
 
 [2]
 The superintendent offered five reasons for his conclusion that Gantt was not qualified to serve as a principal. First, he had heard that Gantt had run up a large milk bill for his school during one of his principalships. No evidence suggested that the bill remained unpaid or that any delay in payment resulted from Gantt's action. He was never disciplined in any manner for the failure to make timely payments. Second, he alleged that Gantt had once been subjected to garnishment. Third, he stated that his notes on Gantt's teaching performance made him question his ability to serve as principal. Fourth, he alleged without example that Gantt had not abided by the board's policy on corporal punishment. Finally, he alleged that he had once been called upon to help collect a debt owed by Gantt
 
 
 [3]
 Title VII cases are of two kinds: those involving allegations of "disparate treatment" and those charging "disparate impact." In suits alleging disparate treatment, such as the one presently before us, the accusation is that "(t)he employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin." International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). The plaintiff must show discriminatory intent and may establish a prima facie case by a showing of the factors outlined in McDonnell Douglas. Cases involving disparate impact, on the other hand, "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity .... Proof of discriminatory motive ... is not required under a disparate-impact theory." 431 U.S. at 336 n. 15, 97 S.Ct. at 1855 n. 15
 
 
 [4]
 Other circuits have also applied McDonnell Douglas in cases arising under 42 U.S.C. § 1981. See, e. g., Flowers v. Crouch-Walker Corp., 552 F.2d 1277, 1281 (7th Cir. 1977); Sabol v. Snyder, 524 F.2d 1009, 1012 (10th Cir. 1975); Long v. Ford Motor Company, 496 F.2d 500, 505 (6th Cir. 1974)
 
 
 [5]
 The school supervisor whose reports defendants placed into evidence did not visit Gantt's class prior to December 1974. The impact of this evidence is therefore relevant only to the Repton decision
 
 
 [6]
 Defendants' failure to prove a legitimate nondiscriminatory reason for failing to promote Gantt is particularly clear when the facts of this case are compared to those where the defendant has been held to carry its burden. See, e. g., Lee v. Washington County Board of Education, 625 F.2d 1235, 1238 (5th Cir. 1980) (prima facie case of employment discrimination rebutted by showing that lack of blacks hired resulted solely from lack of black applicants); Hereford v. Huntsville Board of Education, 574 F.2d 268, 272 (5th Cir. 1978) (evidence indicated that low percentage of blacks appointed to principalships resulted from low percentage of black teachers in school system, and that whites with superior qualifications were passed over for promotion)