Tate WILLIAMS, Plaintiff,

v.

The CITY OF MONTGOMERY, a municipal corporation; Emory Folmar, individually and in his official capacity as Mayor of the City of Montgomery, Alabama; the Fire Department of the City of Montgomery; Jim Sutherland, individually and in his official capacity as Chief of the Fire Department of the City of Montgomery; the Montgomery City-County Personnel Board; Ewell Green, Mrs. Ed Reid, and Charles B. Paterson, individually and in their official capacities as members of the Montgomery City-County Personnel Board, Defendants.

Civ. A. No. 81–323–N.

United States, District Court,
M.D. Alabama, N.D.

Oct. 19, 1982.

Solomon S. Seay, Jr., Gray, Seay & Langford, Montgomery, Ala., for plaintiff.

J. Bernard Brannan, Jr., and Jim Sutherland, Robert C. Black, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, Ala., for defendants The City of Montgomery, Emory Folmar, The Fire Dept. of the City of Montgomery.

Robert D. Segall, Copeland, Franco, Screws & Gill, Montgomery, Ala., for defendants The Montgomery City-County Personnel Board, Ewell Green, Mrs. Ed Reid, and Charles B. Paterson.

## OPINION

MYRON H. THOMPSON, District Judge.

The plaintiff Tate Williams, a black person, has brought this cause of action claiming, first, that the defendants, by terminating his employment as a fireperson because he received a felony conviction while retaining two white firepersons also convicted of felonies, denied him equal protection of the law in violation of 42 U.S.C. § 1983; and, second, that the defendants by their actions discriminated against him on account of his race in violation of 42 U.S.C. §§ 2000e, *et seq.*, otherwise known as Title VII of the Civil Rights Act of 1964, as amended, and in violation of 42 U.S.C. §§ 1981, 1983, 1985.[1] The defendants are the City of Montgomery and its mayor, Emory Folmar; the Fire Department of the City of Montgomery and its chief, Jim Sutherland; and the Montgomery City-County Personnel Board and its three members, Ewell Green, Mrs. Ed Reid, and Charles B. Paterson.[2] All of the individual defendants are white persons.

Upon consideration of this case, which was tried before the court without a jury, and for reasons which follow, the court is of

---

1. The jurisdiction of this court is properly invoked pursuant to 28 U.S.C. §§ 1331, 1343(3) and 42 U.S.C. § 2000e–5(f)(3).

2. The Montgomery City-County Personnel Board handles employment matters for both the City and County of Montgomery.

the opinion that Williams' first claim, denial of equal protection, is time-barred in full; and that his second claim, discrimination on account of race, is time-barred to the extent it is premised on sections 1981, 1983 and 1985, but is not time-barred and has merit to the extent it is premised on Title VII, thereby entitling Williams to appropriate relief.

## I. THE FACTS

During all times relevant, the defendant Montgomery City Fire Department had in effect a policy which required the discharge of any fireperson convicted of a felony. In August 1976, two white firepersons, firefighter William V. Morgan and Lt. Lamar Evans, were convicted, after trial in federal court, of the felony of conspiring to operate, own and conduct an illegal gambling operation in violation of 18 U.S.C. § 371. Morgan was placed on probation for one year and Evans was placed on probation for two years. Although the department's disciplinary board, consisting of several other firepersons, recommended that Morgan and Evans not be terminated, the department's chief at the time, J.A. Odom, rejected the disciplinary board's recommendation and recommended to the director of the City Department of Public Safety, Ed. L. Wright, Jr., and the mayor at the time, Jim Robinson, that both men be discharged. Wright and Robinson accepted Odom's recommendation and Wright mailed Morgan and Evans notices of their dismissal.

Morgan and Evans appealed their dismissal to the defendant Montgomery City-County Personnel Board, which consisted of the defendants Green and Reid and a third member, Thomas M. Tyson, Sr. At the hearing before the board, the Fire Department, while acknowledging that it had an across-the-board policy, did little or nothing to have the policy upheld by the board. The board, therefore, without reviewing the two men's personnel files, but after entertaining testimony from several character witnesses and receiving a letter from the U.S. Attorney recommending that the two men not be terminated, reversed the dismissal of the two men and directed that they both be immediately reinstated without backpay and that Evans be reduced to the rank of a firefighter, with corresponding reduction in pay. It is unclear whether Morgan also suffered a reduction in pay.

Approximately three years later, in November 1979, the plaintiff Williams was convicted, after trial in state court, of the felony of false pretense in violation of § 13–3–92, Code of Alabama 1975, and he was placed on probation for a period of thirteen months. The defendant Sutherland, who had replaced Odom as chief, recommended to the defendant Folmar, who had replaced Robinson as mayor, that Williams be discharged as a firefighter with the city. Folmar accepted the recommendation and Williams was dismissed on November 14, 1979.

As did Morgan and Evans, Williams appealed his dismissal to the personnel board, which still consisted of the two defendants Green and Reid and Thomas M. Tyson, Sr., who has since left the board and has been replaced by the defendant Paterson. However, unlike in the Morgan and Evans cases, the board on January 25, 1980, sustained Williams' dismissal; but as in the Morgan and Evans cases, it reached its decision without consulting Williams' personnel file.

Williams filed a timely charge with the Equal Employment Opportunity Commission and sometime shortly after March 13, 1981, received a "Notice of Right to Sue within 90 Days" from the commission. Williams then filed an action in the court on June 10, 1981.

## II. THE LAW

As already noted, Williams has two claims against the defendants. The first claim is that the defendants by their actions denied Williams equal protection of the law. See, e.g., Zeigler v. Jackson, 638 F.2d 776 (5th Cir.1981) (the plaintiff's right to equal protection of the law was denied where defendants failed to offer a rational justification for the plaintiff's discharge as a police officer due to his criminal convictions, while three other police officers were re-

tained despite their criminal convictions.)[3] This first claim does not involve or turn on Williams' race. The second claim, however, is that the defendants by their actions discriminated against Williams on account of his race. *See, e.g., Brown v. A.J. Gerrard Manufacturing Co.,* 643 F.2d 273 (5th Cir. 1981) (evidence reflected that black employee, discharged for work absences while white employees absent under similar circumstances not discharged, was discriminated against on account of his race.)

■ The defendants maintain that the first claim, which is premised on section 1983, and the second claim, to the extent it is premised on sections 1981, 1983 and 1985, are barred as not timely filed. The court agrees. Since these sections do not contain any limitations period for filing claims, a court, in considering limitations challenges under these sections, must look to applicable state law; and, further, the Alabama limitations statute applicable to claims brought under these sections is, as the defendants contend, § 6–2–39, Code of Alabama 1975, which contains a one-year limitations period. *Doyle v. University of Alabama in Birmingham,* 680 F.2d 1323, 1325 (11th Cir.1982) (section 1983); *Rubin v. O'Koren,* 644 F.2d 1023, 1025 (5th Cir.1981) (section 1983); *Dumas v. Town of Mount Vernon, Alabama,* 612 F.2d 974, 977 (5th Cir.1980) (sections 1981, 1983 and 1985); *Beards v. Stephens,* 372 F.2d 685, 688–89 (5th Cir.1967) (section 1985). Williams' contention that Alabama's ten-year limitations statute, § 6–2–33(3), Code of Alabama 1975, governs claims under these sections is without merit. *Nathan Rodgers Construction & Realty Corp. v. City of Saraland, Alabama,* 670 F.2d 16 (5th Cir. Unit B 1982).

Since Williams' claims arose, at the latest on January 25, 1980, when the personnel board sustained his dismissal, and yet this cause of action was not filed until June 10, 1981, more than a year later, his claims under sections 1981, 1983 and 1985 are barred as untimely by section 6–2–39. This result, however, still leaves for the court's consideration Williams' second claim to the extent it is based on Title VII. The defendants do not contend that this claim of racial discrimination under Title VII is barred as untimely and the court, therefore, now turns to and considers the merit in the claim, according to Title VII law.

■ Proof establishing racial discrimination is seldom direct; rather, in most cases a court must look to surrounding circumstances, circumstantial evidence, to make a determination as to whether a person has been the victim of racial discrimination. Therefore, in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), the Supreme Court set forth the manner in which trial courts should consider claims based on Title VII when the evidence is primarily circumstantial. *Lee v. Russell County Board of Education,* 684 F.2d 769, 774 (11th Cir.1982). A plaintiff has the initial burden of establishing a prima facie case of racial discrimination by a preponderance of evidence, *Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1093, which once established raises a presumption that the plaintiff was discharged by the defendant on racially discriminatory grounds, *id.,* 450 U.S. at 254, 101 S.Ct. at 1094. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the defendant discriminated against the plaintiff. This may be done by the defendant articulating a "legitimate, non-discriminatory reason" for the discharge, a reason which is "clear and reasonably specific" and worthy of credence. *Id.,* 450 U.S. at 253, 256, 101 S.Ct. at 1093, 1095–96. The defendant has a burden of production, not one of persuasion, and thus it does not have to persuade a court that it was actually motivated by the reason advanced. *Id.,* 450 U.S. at 254, 101 S.Ct. at

---

**3.** The Eleventh Circuit has adopted as its precedent the decisions of the former Fifth Circuit. *Bonner v. City of Prichard, Alabama,* 661 F.2d 1206 (11th Cir.1981) (en banc). *See also Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982) (setting out rules of binding precedent for cases decided after the creation of the Eleventh Circuit.)

1094. Once the defendant satisfies this burden of production, the plaintiff then has the burden of persuading a court that the proffered reason for the employment decision is a pretext for racial discrimination. The plaintiff may satisfy this burden by persuading the court either directly that a racially discriminatory reason more than likely motivated the defendant or indirectly that the proffered reason for the discharge is not worthy of belief. *Id.,* 450 U.S. at 256, 101 S.Ct. at 1095. By so persuading the court, the plaintiff satisfies his or her ultimate burden of demonstrating by a preponderance of evidence that he or she has been the victim of intentional racial discrimination. *Id.*

■ To establish a prima facie case, a plaintiff need only show that he or she is a member of the protected class and was discharged while a similarly situated person outside the class was retained. *See, e.g., Lee v. Russell County Board of Education, supra,* 684 F.2d at 773; *Davin v. Delta Air Lines, Inc.,* 678 F.2d 567, 570 (5th Cir. Unit B 1982); *Rohde v. K.O. Steel Castings, Inc.,* 649 F.2d 317, 322 (5th Cir.1981); *Brown v. A.J. Gerrard Manufacturing Co., supra,* 643 F.2d at 276; *Turner v. Texas Instruments,* 555 F.2d 1251, 1255 (5th Cir.1977). Williams has done this. He has shown that he, a black fireperson, was discharged because he was convicted of a felony, while two white firepersons, also convicted of felonies, were not discharged. The issue therefore now before the court is whether the defendants have, in turn, met their burden of production of a reason for his discharge.

■ It is undisputed that the City of Montgomery Fire Department had an objective, across-the-board policy requiring the discharge of any fireperson convicted of a felony. Nevertheless, in the only three instances in which the policy has been invoked, the personnel board, which was fully aware of the policy, refused to follow the policy in the cases of two white firepersons, but later strictly imposed the policy in the case of a black fireperson. The defendants proffer two reasons for this difference in results. They submit, first that the white firepersons' offenses were less serious than Williams' and, second, that the two white firepersons received support from the Fire Department. Upon consideration of these reasons and the other evidence presented by Williams and the defendants, the court finds these reasons to be pretextual and is of the opinion that Williams has been the victim of racial discrimination.[4]

Although *Burdine* places on a defendant only a burden of production, the case requires that the defendant's proffered reason "be clear and reasonably specific" and worthy of credence. This requirement provides a plaintiff with some protection

---

4. Personnel board member Reid testified at trial that a third determinative factor was the fact that Morgan and Evans entered guilty pleas to their offenses while Williams was found guilty by a jury. The court notes, however, that in an earlier response to an inquiry as to why Williams was discharged and the two white firemen were not, Reid failed to mention this third reason. *See* Reid deposition, plaintiff's exhibit no. 37. Also, the other board member, Green, never mentioned this third reason, either in deposition or at trial. *See* Green deposition, plaintiff's exhibit no. 36. The court is therefore of the opinion that this third reason was clearly a fabricated afterthought which, if anything, lends support to the conclusion that the other two proffered reasons were pretextual.

Also, the court notes that while Reid claims Morgan and Evans entered guilty pleas and while the person who was U.S. Attorney at the time these two men were charged indicated in a letter that these two men pled guilty, the "judg-ment and commitment orders" and the "docket sheets" for these two men reflect they did not plead guilty, but rather that they were tried before a court without a jury, after which they were found guilty. *See* plaintiff's exhibit nos. 5 and 14.

Also, Reid noted in a pretrial deposition, introduced at trial, that "[a]ll the testimony before the Personnel Board was to the effect that Morgan and Evans had exemplary records." Plaintiff's exhibit no. 37, p. 7. As to Evans, either the testimony at Evans' hearing before the board was untrue, thereby casting substantial doubt on the vigor with which the City of Montgomery and its officials sought to have upheld Evans' discharge, or Reid failed to present accurately the facts in her deposition; for, the evidence at trial reflected that Evans' record with the Fire Department was far from exemplary. *See* plaintiff's exhibit nos. 21–27. Reid, nevertheless, abandoned this testimony at trial.

against the potential for discrimination in subjective personnel criteria, which are a "ready mechanism" for racial discrimination. *Sims v. Montgomery County Commission,* 544 F.Supp. 420, 426 (M.D.Ala.1982). Therefore, the more subjective the criteria in a defendant's proffered reason, the more difficult will be his or her task in meeting the production burden established in *Burdine.* *Robbins v. White-Wilson Medical Clinic, Inc.,* 660 F.2d 1064, 1067 (5th Cir. Unit B 1981), *vacated on other grounds,* —— U.S. ——, 102 S.Ct. 2229, 72 L.Ed.2d 842 (1982).

With these thoughts in mind, the court now assesses the personnel board's reasons for the differing result between the two white firepersons and the black fireperson. As to the first reason, the personnel board and the other defendants have failed to articulate the criteria by which the members of the personnel board decided that one crime necessitated dismissal while another did not; instead, it appears that this determination was left to the unbridled, unguided, subjective discretion of the individual members of the personnel board. Similarly, with regard to the second reason—that the white firepersons had support from the Fire Department—it is totally subjective in nature. *See Lee v. Russell County Board of Education, supra,* 684 F.2d at 775–76 ("Excessively subjective and vague criteria may be insufficient because they do not allow reasonable opportunity to rebut.") Nevertheless, this court refrains from holding that the defendants' proffered reasons are legally insufficient standing alone, because the court is of the opinion that the reasons are legally insufficient when viewed and considered in the context of all the evidence. This is therefore one of the "cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Burdine, supra,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. *See also Robbins v. White-Wilson Medical Clinic, Inc., supra,* 660 F.2d at 1067.

This other evidence consists of, first, the fact that it was not until after Williams initiated his claims that the personnel board members articulated, let alone adopted, the criteria which they now claim they used in reaching their decision to overturn the discharge of the two white firepersons and uphold Williams', a fact which supports Williams' contention that the criteria, while perhaps descriptive of differences between him and the two white firepersons, were actually not determinative of the outcome of the two cases. Secondly, because the board members never articulated the criteria before Williams initiated his claims, Williams was never aware of the criteria and their possible application to him. And third, the board members completely failed to consult any of the three convicted firepersons' personnel files, with the result that their decision was unsupported and unrelated to any concrete, more objective evidence, such as would ordinarily be found and reflected in personnel files, of the character of these three firepersons and their ability to perform and meet departmental standards; instead, the board members relied on such secondary and extremely subjective evidence as the opinion of the two white firepersons' fellow employees, while faulting Williams for failing to engender similar support. *Cf. Lee v. Conecuh County Board of Education,* 634 F.2d 959, 963 (5th Cir. 1981), *quoting from Crawford v. Western Electric Co.,* 614 F.2d 1300, 1315 (5th Cir. 1980) ("employer may not utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualifications when its promotion process . . . is challenged as discriminatory") (emphasis added). *Cf. also Watson v. National Linen Service,* 686 F.2d 877, 881 (11th Cir.1982) (per curiam) ("The failure to establish 'fixed or reasonably objective standards and procedures for hiring' is a discriminatory practice.") It should be added that at the time Williams was asked to engender such co-employee support, the Fire Department had very few blacks.[5]

---

5. In fact, at the time of trial only 25 out of 355 firepersons in the department were black. The

City of Montgomery has a black population of at least 39%.

However, the above discussion of the personnel board's purported criteria assumes that the criteria were in fact applied to the two white firepersons as well as to Williams, albeit in the case of Williams without his knowledge. The court does not accept this assumption. The court is of the opinion and so finds that the board in the Williams case never actually engaged in the comparisons it now asks this court to make and instead it simply upheld and applied the Fire Department's across-the-board policy of discharge.

It should be added that the Fire Department is not without fault in this matter. The evidence amply supports the conclusion that while the Fire Department had an across-the-board dismissal policy of persons convicted of felonies, the department did not seriously seek to have the policy upheld by the personnel board in the cases of the two white firepersons; whereas, with Williams there was no such "indirect support."

Williams, as a victim of racial discrimination, is now entitled to appropriate relief.

### III. RELIEF

■ A person who is a victim of a Title VII violation is entitled to be placed as near as is practicable in the position in which he or she would have been but for the discrimination, subject to some restrictions on backpay. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 419–25, 95 S.Ct. 2362, 2372–75, 45 L.Ed.2d 280 (1975). This "make-whole" relief available under Title VII includes first, reinstatement to the position sought, with accompanying promotions and retirement and other benefits which the person would have received had he or she not been illegal-

ly denied employment; and, second, backpay from as far back as two years prior to the required filing of a charge with the Equal Employment Opportunity Commission or as far back as the time of the discriminatory dismissal, whichever is more recent, until the time of the person's reinstatement by the employer charged with discrimination, less any amounts the person earned or in the exercise of reasonable diligence should have earned in the interim. 42 U.S.C. § 2000e–5(g). *See also Marks v. Prattco, Inc.,* 633 F.2d 1122, 1125 (5th Cir. 1981) (per curiam). This backpay relief must be against the defendants in the instant case in their *official* capacities only; Title VII provides no authority to hold public officials *individually* liable for backpay awards. *Clanton v. Orleans Parish School Board,* 649 F.2d 1084, 1099 & n. 19 (5th Cir.1981). Finally, a victim of a Title VII violation is entitled to an award of reasonable attorney fees, 42 U.S.C. § 2000e–5(k), determined in accordance with standards set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).

The court is of the opinion that Williams is entitled to the above relief against all the defendants in their official capacities, subject to the qualification that his backpay should extend only as far back as January 25, 1980, the date of the personnel board decision, rather than to November 14, 1979, when he was discharged, and subject to the further qualification that he suffer a reduction in pay comparable to any Morgan may have received.[6] Morgan and Evans did not receive backpay for the period of time between their discharge and reinstatement by the personnel board and Morgan may have

---

**6.** The personnel board and its members contend that any equitable relief under Title VII granted by this court would be inappropriate against them; they claim that they are not "employers" within the meaning of 42 U.S.C. § 2000e(a), (b). The City of Montgomery and its mayor, Emory Folmar, and the city's Fire Department, and its chief, Jim Sutherland, contend, on the other hand, that they cannot be held liable under Title VII because the personnel board, not the city and its officials, was responsible for any racially discriminatory actions against Williams.

The evidence reflects, however, that the City of Montgomery is an employing authority within the meaning of Title VII; and that the personnel board and its members, to the extent that they exercise authority over the employees of the City of Montgomery, *see* note 2, *supra,* and the remaining defendants are all agents of the City of Montgomery. Therefore, all the defendants are proper defendants in their official capacities. *Clanton v. Orleans Parish School Board, supra,* 649 F.2d at 1095 n. 13.

received a reduction in pay; Williams should be treated similarly.

## IV. CONCLUSION

The court feels compelled to add that there is nothing inherently unlawful, under the provisions of Title VII prohibiting racial discrimination, with the defendants, including the personnel board and its members, adopting an across-the-board policy of dismissal regarding firepersons convicted of criminal offenses, as long as that policy is enforced against all firepersons, without regard to race; and further that there is nothing similarly unlawful with the defendants, including the personnel board and its members, adopting exceptions to that policy, as long as the exceptions are articulated to a reasonable degree and are made known to and applied to all firepersons, without regard to race.

An appropriate judgment will be entered in accordance with this opinion.

## JUDGMENT

Pursuant to the memorandum opinion of the court entered this date, it is the ORDER, JUDGMENT, and DECREE of this court:

(1) That the defendants City of Montgomery and its mayor, Emory Folmar, the defendants City of Montgomery Fire Department and its chief, Jim Sutherland, and the defendants Montgomery City-County Personnel Board and its members, Ewell Green, Mrs. Ed Reid, and Charles B. Paterson shall reinstate the plaintiff Tate Williams as a firefighter with the City of Montgomery Fire Department, within fourteen days from the date of this order, with allowance for a reduction in pay and other benefits comparable to that given William V. Morgan when he was reinstated in 1976, but also with such accompanying promotions and retirement and other benefits which the plaintiff Williams would have received had he not been illegally denied reinstatement on January 25, 1980; and that said defendants, in their official capacities, shall pay backpay, determined according to accepted legal principles, to the plaintiff Williams from January 25, 1980, to the time of his reinstatement;

(2) That the plaintiff Williams be and he is hereby allowed fourteen days from the date of this order within which to file his request for reasonable attorney fees, which request shall address each of the criteria set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974);

(3) That all parties to these proceedings be and they are hereby allowed fourteen days to file a request with this court to determine appropriate backpay, should said parties be unable to agree among themselves as to the amount of backpay to which the plaintiff Williams is entitled; and

(4) That all other relief sought by the plaintiff Williams in this case that is not specifically granted be and the same is hereby denied.

It is further ORDERED that all costs of this proceeding be and they are hereby taxed against the defendants in their official capacities, for which execution may issue.