Alvie THOMPKINS, Plaintiff-Appellant,

v.

**MORRIS BROWN COLLEGE,**
Defendant-Appellee.

No. 83–8847.

United States Court of Appeals,
Eleventh Circuit.

Feb. 4, 1985.

Thomas E. Maddox, Jr., Atlanta, Ga., for plaintiff-appellant.

* The Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sit-

Lenwood A. Jackson, Atlanta, Ga., for defendant-appellee.

Before KRAVITCH and HENDERSON, Circuit Judges, and ATKINS *, District Judge.

KRAVITCH, Circuit Judge:

Plaintiff Alvie Thompkins brought this employment discrimination suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff claims that defendant Morris Brown College discriminated against her by refusing to grant her part-time employment on the same basis as male employees and by discharging her for maintaining full-time employment outside of defendant college while allowing males to maintain such outside employment. Plaintiff also claims that defendant retaliated against her for complaining of this alleged sex discrimination to the Equal Employment Opportunity Commission (EEOC). The court below found in favor of the defendant on both grounds. Because we find that the court applied the wrong legal standard to plaintiff's claim of sex discrimination, and inadequately analyzed her claim of retaliation, we reverse and remand.

## I. BACKGROUND

The district court made the following findings of facts:

Plaintiff, a female, was employed as a full-time instructor of mathematics at defendant college from the fall of 1977 until her discharge in 1980. Plaintiff's teaching schedule at defendant college for each of the semesters from the fall of 1977 through the fall of 1979 was such that her classes were either all in the early part of the day or all in the latter part of the day. During the academic year 1979–80, plaintiff also was employed as a full-time instructor of math at Douglass High School, requir-

ting by designation.

ing her to be at the high school between 8 a.m. and 3 p.m.

Defendant's policy was to discourage full-time employment outside of defendant college by full-time faculty members. Plaintiff was the only full-time female faculty member with a full-time outside job. With the exception of plaintiff's predecessor, Mr. Albert Taylor, no other faculty member classified as full time had ever maintained a full-time outside job. There was no evidence to show that Dr. Payne, Vice President of Academic Affairs of defendant college, was ever aware of Taylor's outside full-time employment. There were persons employed full time elsewhere who were hired by defendant as part-time faculty members. Two such employees were Dr. Mosteller and Dr. Gilliam. Mr. Evans was another male faculty member employed part time at defendant college,[1] but the lower court found no evidence that he had other full-time employment. The lower court found that there was some dispute as to what constituted full-time faculty status at defendant college; "[t]hat is, whether or not the assignment of a courseload of twelve hours or more, in and of itself, rendered a faculty member a full-time employee." *Thompkins v. Morris Brown College*, C81–1059A, slip op. at 3 (N.D.Ga. Oct. 31, 1983). The court, however, concluded that Mosteller, Gilliam, and Evans were part-time employees as evidenced by their pay, the lack of any formal requirement to attend faculty meetings, and their understanding of their status. In addition, two women were employed on a part-time basis and assigned ten to twelve hour courseloads.[2]

Mosteller, Gilliam, and Evans taught in the business department. Defendant offered evidence that special needs—including the need for PhDs and the large number of students majoring in business—created the necessity for large courseloads for these part-time teachers. The lower court concluded that "[t]here was no evidence disputing such contentions." *Id.* at 4.

Early in the 1979–80 academic year, Dr. Payne learned that plaintiff had undertaken full-time employment at Douglass High School. He informed her of defendant's policy against such employment by full-time faculty members, and asked her to decide which full-time job she wanted to keep. Subsequently, in the fall of 1979, Payne had plaintiff assigned to a morning class for the second semester of the academic year, 1979–80. In early January of 1980, Payne visited plaintiff's morning class and discovered plaintiff absent and a student in charge. Plaintiff had authorized the student to oversee the class in her absence. Payne dismissed the class.

In December of 1979 and January of 1980, Payne again asked plaintiff to decide which job she wanted to keep full time. Plaintiff did not advise Payne of her decision. In letters dated February 8, 1980, and March 4, 1980, Payne notified plaintiff of her termination. Three of plaintiff's classes were assigned to James Rigdon following plaintiff's dismissal.

Plaintiff testified that she visited the EEOC in November, 1979, and inquired about her rights. She stated that the EEOC officer called Payne at that time. Payne denied receiving the telephone call and the lower court concluded that it did not appear that Payne received such a call. Plaintiff filed a charge of sex discrimination with the EEOC on January 17, 1980, subsequently amending the charge to include retaliation. On March 3, 1980, the EEOC issued a determination of reasonable cause on both charges.

Plaintiff alleges the following facts contrary to, or in addition to, those found by the district court:

> Mosteller taught twelve hours at defendant college and Gilliam taught nine hours at defendant college. One class is equivalent to three hours.

---

**1.** The lower court found that Evans had a twelve-hour courseload at Morris Brown College, but did not comment upon the number of hours Mosteller and Gilliam taught. The record reflects that, at least during some of the time that they taught part time at defendant college,

**2.** There is no contention that these women had employment outside of defendant college.

Plaintiff contends that the policy in the faculty handbook is one of "not encouraging" outside employment, but that this policy was not followed.[3] She alleges that the following male teachers were not held to this policy: Taylor, her predecessor, taught full time at defendant college and had full-time outside employment.[4] Mosteller, Gilliam, and Evans had full-time outside employment while maintaining courseloads of nine to twelve hours. In addition, Rigdon, plaintiff's replacement, taught nine hours at defendant college while maintaining full-time outside employment. Although Mosteller, Gilliam, Evans, and Rigdon were classified as part-time employees of defendant college, plaintiff's request to teach either nine or twelve hours on a part-time basis was denied. Rather, plaintiff alleges that defendant would only allow her to teach six hours on a part-time basis if she chose to keep her full-time outside job.[5] Plaintiff further contends that defendant's alleged rationale for allowing the part-time male teachers to teach nine to twelve hours, the need for PhDs in the business department, is pretextual as shown by (1) the fact that Evans is not a PhD and that Rigdon taught in the mathematics department, and (2) the testimony of the chairperson of the mathematics department that teachers were sorely needed in that department.

Plaintiff alleges that two statements were made which constitute direct evidence of discriminatory intent. Dr. Threatt, President of defendant college, allegedly said that he saw no reason for a woman to have a second job. Dr. Payne, Vice President of Academic Affairs of defendant college, stated that the reason that plaintiff could not have four classes in the afternoon like the men was because those males had families and needs that the plaintiff did not have. These two statements were introduced through plaintiff's testimony, and were not rebutted through cross-examination or subsequent testimony.

Regarding her charge of retaliation, plaintiff states that soon after her original contact with the EEOC, Payne called plaintiff's department chairperson and instructed her to change plaintiff's spring schedule so that she would have morning ·classes. Payne was aware that morning classes would conflict with plaintiff's high school teaching. In January, 1980, plaintiff filed a formal EEOC charge. Plaintiff contends that defendant subsequently harassed her through actions such as dismissing her class one day· during the first or second week of February, withholding her paycheck on February 29 and April 1, and ultimately firing her on April 15, 1980. Plaintiff further alleges that she was entitled to certain procedures prior to discharge that she did not receive.

## II. SEX DISCRIMINATION

This is a disparate treatment case. Plaintiff claims that she was discriminated against because of her sex in that she was not permitted to work both full time at defendant college and full time outside as had her predecessor, nor was she allowed to work full time outside of defendant college while maintaining part-time employ-

---

**3.** The 1979 Morris Brown College Faculty Handbook states:

> The College does not encourage outside employment by full-time faculty or an intensive involvement which may interfere with his/her duties at the College. Any outside employment or involvement by a full-time faculty member must be approved in advance by the Vice President for Academic Affairs and the President.

**4.** Plaintiff claims that Payne ordered her to choose between her two jobs pursuant to the direction of Dr. Threatt, the President of defendant college. She further claims that Dr. Threatt was aware of Taylor's outside employment and told him that he did not like it, but took no action against Taylor. In its oral findings, the district court referred to Taylor's testimony that Threatt knew of Taylor's outside employment. The court did not state explicitly whether or not it believed Taylor.

**5.** In September of 1980, defendant offered plaintiff part-time employment of nine hours. Plaintiff was told she could choose the three courses (or nine hours) out of four courses offered to her. Plaintiff contends, however, that this offer was not made in good faith because only one of the four classes would not conflict with her job at the high school.

ment of nine or twelve hours at defendant college as did Mosteller, Gilliam, Evans, and Rigdon. Because she refused to choose between full-time employment at defendant college and full-time employment at Douglass High School, she was discharged while male teachers who had large part-time courseloads at Morris Brown and full-time outside work were allowed to continue such work.[6]

■ The court below evaluated plaintiff's claim of sex discrimination in accordance with the legal standards set out in *McDonnell-Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Under *McDonnell-Douglas*, as explained by the Supreme Court in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and as applied to the situation at bar, the plaintiff must make out a prima facie case by proving by a preponderance of the evidence that she is a member of a protected class, was qualified for the position held, and was discharged and replaced by a person outside of the protected class or was discharged while a person outside of the protected class with equal or lesser qualifications was retained.[7] *See, e.g., Lee v. Russell County Board of Education*, 684 F.2d 769, 773 (11th Cir. 1982). Plaintiff's prima facie case creates a rebuttable presumption of discrimination which, if not rebutted, requires a verdict for plaintiff. *Burdine*, 450 U.S. at 254 & n. 7, 101 S.Ct. at 1094 & n. 7; *Lee*, 684 F.2d at 773. The defendant's burden, however, is merely one of production, not of persuasion. The defendant need only articulate a legitimate, nondiscriminatory reason for its action. *Burdine*, 450 U.S. at 257–58, 101 S.Ct. at 1095–96; *Lee*, 684 F.2d at 773. Once this burden is met, plaintiff must demonstrate by a preponderance of the evidence that defendant's reason "is pretextual or more directly that a discriminatory reason motivated the discharge." *Lee*, 684 F.2d at 773, *citing Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1094–95.

■ In the present case, the court below determined that plaintiff had established a prima facie case.[8] The court then found that:

6. These claims are cognizable under 42 U.S.C. § 2000e–2 which states:
   (a) It shall be an unlawful employment practice for an employer—
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

7. Plaintiff's claim is both for discriminatory discharge and for discriminatory treatment in the hours of employment. Adapted to a charge of disparate treatment with respect to hours of employment, plaintiff's prima facie case consists of showing that: (1) she is a member of a protected class, (2) was similarly situated with a person outside of the protected class, but (3) was denied a condition of employment afforded that person. *See McDonnell-Douglas*, 411 U.S. at 802–3, n. 13, 93 S.Ct. at 1824–25, n. 13. In this context, similarly situated does not refer to whether an employee is classified as "full-time" or "part-time." An employer cannot avoid its responsibility for nondiscriminatory treatment by the use of labels. Rather, it is the defendant's refusal to allow plaintiff to work part time that is in issue. Thus, in order to fulfill her prima facie case, plaintiff need only show that the males who worked full time outside of defendant college were granted a term of employment (in this case part-time employment of nine to twelve hours) that was denied plaintiff. The burden then shifts to defendant, as discussed, *infra*. Under either articulation of plaintiff's prima facie case, however, plaintiff met her burden. *See* n. 8 *infra* and accompanying text.

8. The lower court made contradictory rulings on this point. The court first stated:
   [P]laintiff made a prima facie showing, in accordance with *McDonnell-Douglas v. Green, supra*, that she was female, qualified, employed by defendant, has been terminated, and was replaced by a male. Plaintiff also showed that Dr. Mosteller, Dr. Gilliam and Mr. Evans were allowed to teach nine to twelve course hours during certain semesters while she was employed by defendant.
   *Thompkins v. Morris Brown College*, C81–1059A, slip op. at 10 (N.D.Ga. Oct. 31, 1983). In the next paragraph, however, the court found:

While the part time males named by plaintiff were assigned larger course loads than that offered to plaintiff, defendant's explanation of the reason for this disparity reveals a legitimate business reason for the difference and is not deemed by the court to be pretextual.[9]

*Thompkins v. Morris Brown College,* C81–1059A, slip op. at 10 (N.D.Ga. Oct. 31, 1983).

■ The *McDonnell-Douglas* test, however, is not the exclusive means of proving a case of disparate treatment in employment. *See, e.g., Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1556 (11th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984); *Lee,* 684 F.2d at 773–774. Rather, this court has determined that "where a case of discrimination is proved by direct evidence, it is incorrect to rely on a *McDonnell-Douglas* rebuttal." *Bell,* 715 F.2d at 1557; *citing Lee,* 684 F.2d at 774. This is so because circumstantial evidence is used to create an inference of discrimination under *McDonnell-Douglas,* while no such inference is required in the case of direct evidence. *Bell,* 715 F.2d at 1556–57; *Lee,* 684 F.2d at 774. Thus, when

In order to make out a prima facie case and thus cast the burden upon defendant to rebut her allegations of discrimination, plaintiff must make a showing of purposeful or intentional discrimination. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324 [97 S.Ct. 1843, 52 L.Ed.2d 396] (1977); *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252 [97 S.Ct. 555, 50 L.Ed.2d 450] (1976). Plaintiff has failed to meet this standard.

*Id.* This second description of the requirements of a prima facie case is incorrect. *See, e.g., Lee,* 684 F.2d at 773.

9. Presumably, the court is referring to defendant's allegation that special needs in the Business Department, including the need for PhDs in that department and the large number of students majoring in business, created the necessity for the larger caseloads of these part-time teachers.

10. The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

11. The statements by Payne and Threatt are similar to the direct evidence proffered in *Bell*

there is direct evidence "that the defendant acted with a discriminatory motive, and the trier of fact accepts this testimony, the ultimate issue of discrimination is proved." *Bell,* 715 F.2d at 1557. In such cases, the defendant's burden is not merely one of production, but rather,

[o]nce an unconstitutional motive is proved to have been a significant or substantial factor in an employment decision, defendant can rebut only by proving by a preponderance of the evidence that the same decision would have been reached even absent the presence of that factor. *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). *See, e.g., Avery v. Homewood City Board of Education,* 674 F.2d 337 (5th Cir.1982, Unit B) [, *cert. denied,* 461 U.S. 943, 103 S.Ct. 2119, 77 L.Ed.2d 1300 (1983)[10]].

*Lee,* 684 F.2d at 774 (footnote omitted); *see also Bell,* 715 F.2d at 1557.

■ We agree with plaintiff that the alleged statements of Payne and Threatt constitute direct evidence of discrimination.[11] The lower court, however, applied the

and *Lee.* In *Bell,* plaintiff wanted the position of "extra washman." Although she was the senior person to bid for the job, she initially was denied the job by the production manager. Following a meeting between the union representative and the employer she was given the position. When she reported for work as a washman, however, the production manager told her that he had added new jobs to the position. As direct evidence of discrimination, plaintiff and the union representative testified that the production manager had said that he would not put plaintiff in the washroom because if he did "every woman in the plant would want to go into the washroom." 715 F.2d at 1553. In *Lee,* several teachers claimed that the decision not to reemploy them was based on racial discrimination and a principal claimed that he was not reemployed because of his support for those teachers. The principal and the superintendent of education testified that the discharges were racially motivated. In addition, there was evidence that school board members and a past principal sought to maintain a "white presence" and stop white flight and had urged the principal who was fired to "build cases" against black teachers. 684 F.2d at 774–75.

*McDonnell-Douglas* test without reference to this proffered direct evidence. We hold that this was error. When direct evidence of discrimination has been introduced, the lower court must, as an initial matter, specifically state whether or not it believes plaintiff's proffered direct evidence of discrimination. *See Lee,* 684 F.2d at 772, 774. Absent any reference to the direct evidence, it is unclear what the court below found.

The court might have disbelieved plaintiff's proffered evidence. If so, the court should have stated "why this apparently highly probative evidence was discredited ... [since] [i]n these circumstances some indication of the court's reasons for rejecting this evidence must be given in order for us to exercise properly our function of appellate review."[12] *Lee,* 684 F.2d at 775. *Cf. Golf City, Inc. v. Wilson's Sporting Goods Co.,* 555 F.2d 426, 433–36 (5th Cir. 1977).[13]

Alternatively, the court might have found plaintiff's testimony about Threatt and Payne's statements credible. If so, the court's ultimate finding in favor of defendant was clearly erroneous.[14] Defendant did not attempt to rebut or impeach plaintiff's testimony or to otherwise explain how Payne and Threatt put aside their bias in their treatment of plaintiff.[15] *See Bell,* 715 F.2d at 1557. Defendant's ability to show that it would have made the same employment decisions even if Thompkins were male was further weakened by plaintiff's showing that her male predecessor, her male replacement, and several other males were granted an employment condition that defendant was denied. *See* n. 16, *infra.* In fact, the alleged statements were made in response to plaintiff's request for similar treatment.

Thus, this case must be remanded to the district court for a determination of whether Threatt and Payne made the discriminatory statements. If the district court finds that the statements were made, it must enter judgment for plaintiff. *See Lewis v. Smith,* 731 F.2d 1535 (11th Cir.1984). If the court finds that the statements were not made, it must clearly articulate this finding.[16]

---

**12.** The district court did state that "[i]t is also the finding of the court that the record contains no evidence to indicate that plaintiff's termination was motivated by any intent on the part of defendant to discriminate against plaintiff on account of her sex." C81–1059A, slip op. at 10 (N.D.Ga. Oct. 31, 1983). This statement, however, is insufficient as it does not directly address the alleged discriminatory remarks of Payne and Threatt. The statement also is inconsistent with the court's earlier finding that plaintiff made out her prima facie case.

**13.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**14.** "[T]he ultimate question in this case, the existence of discrimination *vel non* is a factual matter." *Bell,* 715 F.2d at 1557, *citing Pullman-Standard v. Swint,* 456 U.S. 273, 289–90, 102 S.Ct. 1781, 1790–91, 72 L.Ed.2d 66 (1982). Thus, pursuant to Fed.R.Civ.P. 52(a), this court can reverse the trial court's determination only if it is clearly erroneous, that is, if based on the entire evidence we would be left with a definite and firm conviction that a mistake had been made. *See, e.g., United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

**15.** Belatedly on appeal, defendant attempted to claim that Payne's statement, if made, was anti-single people, rather than anti-female. However, even if this explanation was plausible, it was not presented to the trial court and cannot be considered on appeal.

**16.** The court must then evaluate defendant's proffered nondiscriminatory reason, and plaintiff's claim that this reason is pretextual. In doing so, the court should bear in mind that "[o]bviously, the more subjective the qualification sought and the more subjective the manner in which it is measured, the more difficult will be defendant's task in meeting the burden imposed by *Burdine." Fowler v. Blue Bell, Inc.,* 737 F.2d 1007, 1011 (11th Cir.1984). *See also Bell,* 715 F.2d at 1559; *Watson v. National Linen Service,* 686 F.2d 877, 881 (11th Cir.1982); *Lee,* 684 F.2d at 775–76. In the present case, although the rule against outside employment is objective on its face, plaintiff introduced evidence of its subjective enforcement. *See, e.g., Williams v. City of Montgomery,* 742 F.2d 586, 588 (11th Cir.1984) (justification for firing black employee but retaining white employees—all of whom violated work rule—is insufficient to establish a legitimate, nondiscriminatory reason where objective rule applied subjectively); *Sims v. Montgomery County Commission,* 544 F.Supp.

565

III. RETALIATION

Plaintiff also appeals the lower court's finding for defendant on her claim of retaliation pursuant to 42 U.S.C. § 2000e–3(a).[17] Plaintiff agrees with the district court that the *McDonnell-Douglas* test is applicable here, but alleges that (1) the district court made contradictory findings about the existence of retaliation, (2) the defendant failed to articulate a legitimate nondiscriminatory reason for its actions, and (3) the court failed to apply the third step of the *McDonnell-Douglas* test. For the reasons set out below, we reverse and remand the lower court's opinion for further and more explicit findings.

The lower court held that in order to establish a *prima facie* case of retaliation, plaintiff must show:

(1) that she was engaged in protected activity, *i.e.*, that she participated in Title VII proceedings; (2) that her employer was aware of the protected activity; (3) that she was subsequently terminated; and (4) *evidence tending to establish a retaliatory motive* on the part of the employer in its adverse treatment of her.

*Thompkins v. Morris Brown College*, C81–1059A, slip op. at 8 (N.D.Ga. Oct. 31, 1983) (emphasis added).[18] The court then found "[t]hat plaintiff has made out a *prima facie* case," *id.* without elaborating on how plaintiff had made this showing. The court later concluded that "[t]he record contains *no evidence* of the requisite retaliatory intent ...." *Id.* at 9 (emphasis added). These findings are inconsistent and, without further elaboration, do not allow this court to conduct an adequate review. *Cf. Lee County Branch of NAACP v. City of Opelika*, 748 F.2d 1473, 1480 (11th Cir. 1984); *Complaint of Ithaca*, 582 F.2d 3, 4 (5th Cir.1978). Thus, we remand plaintiff's retaliation claim to the district court for a fuller explanation of its findings.[19]

The lower court also found "that defendant has met its burden of articulating legitimate, nondiscriminatory reasons for plaintiff's termination." *Thompkins v. Morris Brown College*, C81–1059A, slip op. at 8 (N.D.Ga. Oct. 31, 1983). The legitimate reason that the court found was plaintiff's refusal to decide which full-time job she wished to keep. Plaintiff alleges that she was faced with this decision only because of defendant's sexism; that is,

420, 427 (M.D.Ala.1982) ("uneven application of criteria is strong evidence that the criteria were never in fact employed in the selection process and were used by the employer as merely a pretext for discrimination"). First, plaintiff's predecessor was not fired for similar outside employment. As discussed in note 4, *supra*, the court did not rule on whether Threatt was aware of Taylor's dual employment. Second, several males who were classified as part time were allowed to maintain large courseloads inside of defendant college as well as maintain outside employment. As discussed in note 7, *supra*, defendant cannot escape its obligation under Title VII merely by classifying male and female employees differently without a legitimate nondiscriminatory reason for such action. In addition, the court did not explain why Rigdon, a math teacher, and Evans, a business teacher without a PhD, were permitted to benefit from defendant's alleged business necessity, a need for PhDs in the business department. Thus, the present case is similar to *Williams v. City of Montgomery*, 550 F.Supp. 662 (M.D.Ala. 1982) where the court found that the criteria, while perhaps descriptive of differences between employees, was not actually determinative of how they were treated. *Id.* at 667.

17. 42 U.S.C. § 2000e–3(a) states:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

18. A clearer articulation of the plaintiff's prima facie case in a retaliation claim is that plaintiff must establish (1) actions protected by the statute, (2) an adverse employment decision, and (3) a causal link between the protected actions and the adverse employment decision. *See, e.g., Hamm v. Members of Board of Regents*, 708 F.2d 647, 654 (11th Cir.1983); *Whatley v. Metropolitan Atlanta Rapid Transit*, 632 F.2d 1325, 1329 (5th Cir. Unit B, 1980).

19. On remand, the court should evaluate plaintiff's prima facie case in terms of the test set out in note 18, *supra*. We also reiterate that plaintiff's prima facie case under *McDonnell-Douglas* need only give rise to an *inference* of discrimination, as discussed in section II, *supra*.

that she would not have been put to this choice if she were a male. This court is cognizant that defendant need only articulate a legitimate reason in order to fulfill its burden of production under *McDonnell-Douglas*.[20] We cannot, however, ignore the fact that the veracity of this rationale has been put into question by the direct evidence introduced by plaintiff, as discussed *supra*. Thus, we remand this issue to the district court to determine whether, in light of its reexamination of plaintiff's claim of sex discrimination, it still accepts defendant's proffered response to plaintiff's claim of retaliation.

Finally, plaintiff claims that the court failed to consider her claim that defendant's rationale was pretextual, thus failing to apply the third prong of the *McDonnell-Douglas* test. The court, however, did rule on this prong, stating that "plaintiff has failed in her burden to show that the reasons given by defendant for her dismissal are pretextual." C81–1059A, slip op. at 9 (N.D.Ga. Oct. 31, 1983). The court also explicitly found that Payne did not receive the alleged phone call from the EEOC at the time of plaintiff's initial visit. In addition, the court's oral findings discussed some of the actions that plaintiff claimed constituted harassment and found that these actions were not taken in retaliation to the EEOC charge. Thus, while the court's opinion could have been more detailed, we find that the court did at least reach the issue of pretext. However, in light of the court's confusing and inadequate application of the first two prongs of the *McDonnell-Douglas* test, the last prong must necessarily be reconsidered by the court upon remand.

For the foregoing reasons, the opinion of the district court is REVERSED and REMANDED for proceedings not inconsistent with this opinion.

---

**20.** Logically, even a sexist reason is legitimate in response to a prima facie showing of retaliation. Thus, discharging a woman because she is a woman is cause for a claim under 42 U.S.C. § 2000e–2, discrimination in terms and conditions of employment, but not under 42 U.S.C. § 2000e–3, retaliation in response to protected activity. Precedent, however, clearly states a legitimate *nondiscriminatory* reason is required. *See e.g., Hamm,* 708 F.2d at 654; *Whatley,* 632 F.2d at 1328.